# Exhibit C

# UNITED STATES DISTRICT COURT

## for the

## District of Massachusetts

| | |
|---|---|
| JOSE MARIA DECASTRO, an individual ) | Case No. 1:22-cv-11421 |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S MEMORANDUM AND** |
| ) | **DECLARATION IN SUPPORT OF** |
| v. ) | **MOTION FOR SANCTIONS FOR** |
| ) | **SPOLIATION AND ABUSE OF** |
| JOSHUA ABRAMS, an individual, et al., ) | **PROCESS** |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

### PLAINTIFF'S MEMORANDUM AND DECLARATION IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND ABUSE OF PROCESS

Comes Plaintiff, I, Jose DeCastro, in support of his Motion for Sanctions for Spoliation, does state:

### FACTUAL BACKGROUND

I have a confidential witness, John Doe ("Doe"), that is part of the inner circle of Defendant Katherine Peter ("Peter")'s organization of internet trolls, named the Masshole Troll Mafia ("Masshole"), of which Defendant Josh Abrams ("Abrams") is a member.

Doe is in fear for their safety due to the past harassment of Masshole toward its victims and especially Masshole members that betray the organization. Doe has a respectable job and fears doxing, his employer contacted, and his family members trolled, which is the *modus operandi* of Masshole.

Doe sent me screen shots of Peter, Abrams, nonparty attorney Jon E. Rietveld II ("Rietveld") (CA SBN 320086), and other individuals of Masshole, using Wickr, a text messaging platform that deletes messages after they're read.

The screenshots of the parties using Wickr appear to be from September 30, 2022, which is after both Defendant parties filed their *ex parte* extensions of time, the *ex parte* extensions having been filed without any cause stated. This is even further after the parties were served summons in this action and even further after the parties expected pending legal action. I also sent requests for production of documents to both parties dated October 6, 2022, reminding them of their obligation to preserve evidence. The requests for production were sent more than 21 days after service, as allowed under FRCP. The RFPs were mistakenly mailed to the Court and should be on file with this court. As a *pro se* filer, the docket number is unknown.

The nature of the Wickr messages was simply trolling activity, also known as trash talking, of me and some of my products; tracking my location and sharing it with the Masshole officers; and discussing hiring people to launch a new harassment campaign against me. These messages would not be privileged, and in the extreme would be dual purpose and must be preserved for evidence.

Although my current complaint is only for defamation, the defendants are aware that trade libel is defamation. The complaint will also be amended to include harassment, conspiracy, and other torts under both California and Federal law. My complaint will be amended to include California law. Defendants are aware of my intention to amend my complaint. I am still waiting on my motion to stay the Defendants' *ex parte* extensions of time, which was pled in the alternative on my opposition which I mailed to the court on October 3, 2022, as a decision on that motion may make anything after moot.

Doe will testify that Defendants and Rietveld used Wickr on September 30,2022 and continued to use Wickr after that date. I am requesting leave of this court to file a sealed affidavit and documentary evidence (Wickr screenshots).

Defendant Peter, instead of using the email address that I put on my complaint, investigated, and found a personal email address (iamalaskan@gmail.com) that I have that I have never published. Peter then included that email address in her "I haven't looked for a lawyer" letter to the court, making my private email address public record. This is the type of game that Peter has been playing with my personal information since her harassment of me started. It is surely intentional and an abuse of the court system. Unless Defendant peter can show a court document or an email from me showing that email address, she will be unable to prove that it was not an intentional violation of my right to privacy and an abuse of the process of this Court for improper and harassing submissions.

Defendant's counsel Benjamin J. Wish ("Wish") (BBO # 672743) told me on the phone on October 18, 2022, in part, and in general that he would love to litigate this case on the merits, but due to the firehose of information he's being bombarded with he does not yet know what the facts are. Wish is preparing a frivolous defense, has made no effort to confer, and has not looked at the evidence. My declaration in the original complaint shows defamation *per se* by Defendant Peter. It was made in a YouTube video that is still published. There is no later retraction. The defamatory statement is even in the text title of the video. Additionally, since Wish's very first document filed in this action, in his certifications of service, he insists on serving me by email, when I never consented, and he knows that. He knows that I am a foreign *pro se* party and insists that I accept his email notices with no time to file responses yet refuses to accept my notice to him that I cannot accept notice by email, which shouldn't even be required, as the absence of

consent should have been sufficient. Wish is also aware of the spoliation of evidence but is deciding to delay my filing for relief. Wish knew that I could not talk to him on behalf of Defendant Peter until I was served with a notice of appearance, especially since I have received numerous emails from fake attorneys recently, who were trolls, attempting to delay the process of this action. I could not be delayed trying to confer with a troll instead of the proper party. Wish knew this, but instead of couriering me the notice of appearance, he took his time, and I just got the notice on October 18,2022. I immediately attempted to confer with him, including for this motion, even though it was past the deadline that I had asked Defendant Peter to confer. Wish knew about this deadline, but showed no hurry, obviously just trying to delay my filing of my motion. Wish provided his phone number but was completely unavailable until he finally answered the phone 4 minutes before an alleged emergency status conference that he had requested with me. He then simply said the above that he hasn't had the time to look at the facts and didn't have time to confer due to the hearing. I told him that I simply could not attend a motion where he had filed evidence and I had not yet had time to file evidence in response, and would be unable to present over the telephone. Additionally, that I obviously had not received proper service.

## **LAW AND ARGUMENT**

These facts demonstrate that, at a minimum, I am entitled to an adverse inference instruction and an award of attorneys' fees and expenses. In sum, Defendants and nonparty attorneys were obligated to preserve evidence, was notified of their obligation by me, in writing, yet inexplicably failed to comply with their obligations and willfully and intentionally destroyed the spoliated text messages.

1. **<u>Spoliation and the Applicable Rule(s)</u>**

Spoliation is the destruction or alteration of evidence, or a failure to preserve evidence for use of the opposing party for pending or future litigation. See *Ins. Recovery Group, Inc. v. Connolly*, 977 F.Supp.2d 16, 23 (D. Mass. 2013). Here, Defendant willfully and knowingly destroyed highly relevant text message evidence. Since text messages are considered electronically stored information ("ESI"), Rule 37(e) of the Federal Rules of Civil Procedure guides the Court's spoliation analysis. See *Hardy v. UPS Ground Freight, Inc.*, No. 3:17-cv-30162-MGM, 2019 U.S. Dist. LEXIS 121277, at *14 (D. Mass. July 22, 2019) (noting that Rule 37(e) applies to text message because they are ESI). Rule 37(e) contains two general levels of sanctions, the imposition of which depends on the spoliating party's level of culpability. If the Court finds Defendant did not act with the intent to deprive a litigant of the information during litigation, but that the spoliation prejudices Plaintiff, the Court may only order "measures no greater than necessary to cure the prejudice." See Fed. R. Civ. P. 37(e)(1). If, however, the Court finds Defendant acted with the intent to deprive Plaintiff of information for use in the litigation, much harsher penalties, including an adverse inference, are available. See Fed. R. Civ. P. 37(e)(2).

2. **<u>Rule 37(e) and its Application</u>**

Rule 37(e)(2)'s adverse inference analysis consists of two parts. First, Plaintiff must establish Defendant spoliated evidence. This element is met because there is no doubt that Defendants spoliated evidence when they: (i) allowed relevant text messages to be destroyed and those text messages cannot be restored or replaced through additional discovery; (ii) knew they should have preserved the text messages; and (iii) failed to take reasonable steps to preserve the text messages. See *Postle v. SilkRoad Tech, Inc.*, Civil No. 18-cv-224-JL, 2019 U.S. Dist. LEXIS

5

25961, at **7-8 (D.N.H. Feb. 19, 2019) (citing *Wai Feng Trading Co. v. Quick Fitting, Inc.*, No. CV 13-33WES; C.A. No. 13-56WES, 2019 U.S. Dist. LEXIS 4113, at **17-18 (D.R.I. Jan. 7, 2019) (setting forth elements necessary to obtain spoliation-related sanctions)). Second, in order for the Rule's elevated sanctions to apply, Plaintiff must establish that Defendants spoliated evidence with the intent to deprive me of that information in pending or future litigation. See Fed. R. Civ. P. 37(e)(2). This element is also met because it is obvious that Defendants spoliated these text messages with the intent to deprive me of them in this litigation.

3. **Defendants Allowed Their Text Messages to Be Destroyed, Which Cannot Be Recovered or Restored**

By affidavit of Doe and with evidence that will impeach any testimony, and Defendants' inability to produce the messages in the screenshots in their opposition to this motion or at the hearing for this motion will show that they are unrecoverable, and Plaintiff has no other way to replace the text messages through alternative sources.

4. **Defendants Intended to Deprive Plaintiff of the Spoliated Text Messages in this Litigation**

Here, Defendants' destruction of text messages after being sued and their complete failure to institute any steps to preserve relevant evidence for months proves their intent to deprive me of the use of that evidence in this litigation. "Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent though consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." See *Paisely Park Enters.*, 330 F.R.D. at 236 (quoting *Morris v. Union Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004)) (internal quotations omitted). "There need not be a

'smoking gun' to prove intent." Id. (citing Auer v. City of Minot, 896 F.3d 854, 858 (8th Cir. 2018)). "But there must be evidence of a 'serious and specific sort of culpability' regarding the loss of the relevant ESI." See id. Here, there is serious and specific evidence demonstrating Defendant's culpability in his text message spoliation.

Defendants' spoliation timeline and knowledge of using a platform that has a unique feature of deleting messages after they're read belie any arguments that Defendants inadvertently or negligently allowed the destruction of their spoliated text messages. See, e.g., *Brewer v. Leprino Foods Co.*, No. CV-1:16-1091-SMM, 2019 U.S. Dist. LEXIS 14194, at \*\*31-33 (E.D. Cal. Jan. 29, 2019) (awarding an adverse inference under similar circumstances because the spoliator's "pattern of conduct suggests intentional spoliation"). Defendants were obligated to preserve these messages, and their complete disregard of that obligation evinces their intent to deprive me of their use.

*Cruz v. G-Star Inc.* is an instructive case in which the United States District Court for the Southern District of New York found "intent to deprive" and granted an adverse inference. See 17-CV-7685 (PGG) (OTW), 2019 U.S. Dist. LEXIS 102686 (S.D.N.Y. June 19, 2019). Like the defendants in *Cruz*, Defendant spoliated evidence after consulting with his counsel and after failing to take any reasonable steps to preserve his text messages prior to their deletion. See id. at \*\*40-41. Further, like the *Cruz* defendants, the spoliation timeline and Defendant's description of how and/or why the evidence was destroyed is dubious at best. See id. at \*45. The *Cruz* court granted an adverse inference noting it would "serve the prophylactic and punitive rationales for such an instruction, deterring such destruction, and properly placing the risk of erroneous judgment on the party that wrongfully created the risk." Id. at \*\*46-47 (citing *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998)); see also Colonies Partners L.P. v. Cnty. of San Bernardino,

7

No. 5:18-cv-00420-JGB (SHK), 2020 U.S. Dist. LEXIS 56922, at **31-33 (C.D. Cal. Feb. 27, 2020) (awarding adverse inference for spoliation of text messages); *Benefield v. MStreet Entm't, LLC*, No. 3:13-cv-1000, 2016 U.S. Dist. LEXIS 11472, at **22-23 (M.D. Tenn. Feb. 1, 2016) (same). The *Cruz* court also noted that "an adverse inference instruction serves the remedial function of restoring the prejudiced party to the same position she would have been in absent the wrongful destruction of evidence by the opposing party . . . [as] Defendants' destruction . . . limited the universe of documents available for Plaintiff to use in this litigation." See *Cruz*, 2019 U.S. Dist. LEXIS 102686, at *47. Like *Cruz*, this Court should sanction Defendants' willful efforts to deprive me of ESI necessary to prosecute its case against them by granting me an adverse inference instruction against Defendants. In addition, I respectfully request the reasonable attorneys' fees incurred to rectify Defendant's spoliation efforts pursuant to Rule 37. See, e.g., *Nationwide Life Ins. Co. v. Betzer*, Case No. 5:18-cv-39-Oc-30PRL, 2019 U.S. Dist. LEXIS 194165, at *44-45 (M.D. Fla Oct. 28, 2019) (agreeing that it is appropriate for the spoliator to pay reasonable attorneys' fees and cost of prosecuting the sanctions motion/litigating the sanctions issue); see *also Kormanis*, 2019 U.S. Dist. LEXIS 40195, at *31 (awarding attorneys' fees and costs incurred in filing and arguing the spoliation motion); *Postle*, 2019 U.S. Dist. LEXIS 25961, at **20-21. Fairness and justice require no less.

Defendants Peter and Abrams have refused to confer regarding this motion. Instead, they delayed conferring with me until 4 minutes before an alleged emergency status conference that I did not receive proper notice of. I am at a great disadvantage if the Defendants file evidence with a motion and I am unable to file evidence in response before attending a telephonic conference where only testimony can be heard. I am not required to waive my right of proper service, and a duty to waive that right would be greatly prejudicial against me. It is clear by these tactics that

Defendants are likely going to oppose this motion but they also are using unfair strategies to try to prevent my filing of it. This is evidence toward their culpability and against their credibility.

### 5. Sanctions Against Nonparty Attorneys

While nonparty attorneys do fall under rules for sanctions, there are two questions. One question in this case might be whether nonparty Rietveld is actually a party, or actually a party's attorney and is eligible for interlocutory appeal to a sanction ruling. The other question is whether sanctions should be continued until after the 26(f) conference because a court may not have jurisdiction over a nonparty until service of a subpoena. See *Cuthbertson v. Excel Indus.*, 179 F.R.D. 599, 1998 U.S. Dist. LEXIS 7333 (D. Kan. 1998).

### 6. Sanctions For Abuse of Process

Under Fed. R. Civ. P. 11(b), a party represents that submissions are not, in part, "being presented for improper purpose, such as to harass… ". See also *Pronav Charter II, Inc. v. Nolan*, 206 F. Supp. 2d 46, 53-54 (D. Mass. 2002) (noting that Rule 11 applies to *pro se* litigants). Fed. R. Civ. P. 11(c) provides for sanctions for violations of 11(b). Defendant Peter should receive sanctions for including my email address in her submission to this Court. Defendant's attorney Wish should receive sanctions for making a frivolous defense and intentionally violating Fed. R. Civ. P. 5(b) in a horribly prejudicial manner.

### CONCLUSION

Under these circumstances, an adverse inference and jury instruction sanction against Defendants is appropriate because they willfully allowed relevant, responsive text messages to be deleted on multiple occasions despite previously receiving a hold that explicitly directed them

to preserve their text messages. Defendants acted intentionally to deprive me of the use of this evidence in this litigation, and sanctions pursuant to Rule 37(e)(2) are appropriate. Defendants acted intentionally to violate Rule 11(b) multiple times, and sanctions under Rule 11(c) are appropriate. For all the reasons set forth above, I respectfully request that the Court grant my motion, provide an adverse inference instruction to the jury at any trial of this matter, and award me the reasonable costs and expenses that I incurred in securing this relief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 18, 2022

Respectfully submitted,

_____
Jose DeCastro
1258 Franklin St.
Santa Monica, CA 90404
chille@situationcreator.com
(310) 963-2445
*Pro Se*