UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

)
JOSE MARIA DeCASTRO, a/k/a )
CHILLE DeCASTRO, a/k/a DELETE )
LAWZ, )
    Plaintiff, )
)
v. ) C.A. No. 1:22-cv-11421-ADB
)
JOSHUA ABRAMS, a/k/a )
ACCOUNTABILITY FOR ALL, KATE )
PETER, a/k/a MASSHOLE TROLL )
MAFIA, )
    Defendants. )
)

**JOSHUA ABRAMS' OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

**I.  PRELIMINARY STATEMENT**

NOW COMES defendant Joshua Abrams a/k/a Accountability for All ("Abrams") who respectfully opposes plaintiff Jose Maria DeCastro a/k/a Chille DeCastro, a/k/a Delete Lawz ("DeCastro") motion to dismiss Abrams' counterclaims.  In his motion, DeCastro levies a laundry list of reasons for dismissal, however each such argument is either baseless, or undeveloped in a way that it fails to adequately put Abrams, and the Court, on notice of the reasons for dismissal.  In all instances, DeCastro's motion should be denied.

**II.  PROCEDURAL AND FACTUAL BACKGROUND**

On September 2, 2022, DeCastro filed a lawsuit against Abrams and co-defendant Kate Peter, a/k/a Masshole Troll Mafia ("Peter") alleging defamation-based claims, including defamation and intentional infliction of emotional distress.  *See* COMPLAINT FOR DEFAMATION [ECF No. 1] (hereinafter referred to as the "Complaint").  These claims purport to be predicated on statements made by Abrams and Peter on various YouTube channels during ongoing debate

1

and argument between the parties.  *See id*.  On November 7, 2022, Abrams answered DeCastro's Complaint and counterclaims against DeCastro for various defamatory statement DeCastro made about Abrams on YouTube.  *See* JOSHUA ABRAMS A/K/A ACCOUNTABILITY FOR ALL'S ANSWER, JURY DEMAND, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS [ECF No. 53] (hereinafter referred to as "Abrams' Counterclaims").  Two days later, DeCastro docketed a letter with the Court claiming that he had intended to dismiss his Complaint without prejudice.  *See* ECF No. 55; *see also* ECF Nos. 56, 58, 59, 60, 66, 73, 80, 82, and 83 (seeking similar relief).  In each instance, citing to FED. R. CIV. P. 41, and recognizing that both Abrams and Peter had answered the Complaint and filed counterclaims, the Court could not dismiss the lawsuit without consent of all parties.  *See, e.g.*, ECF No. 57, 67, 74, 81, 85; *see also* ECF No. 64 (Abrams and Peter declining to consent to dismissal).

Acknowledging that the litigation was going to continue, DeCastro has now moved to dismiss the counterclaims filed both by Abrams and by Peter.  With respect to Abrams, his counterclaims identified several defamatory statements DeCastro made about Abrams.  This included statements accusing Abrams of being a rapist, an attempted rapist, accusing Abrams of going to prison for raping his girlfriend, and beating up his father.  *See* ABRAMS' COUNTERCLAIMS, at ¶ 14.  Abrams identified four YouTube videos that contained these defamatory statements.  *Id*.  In addition, Abrams referenced other defamatory statements made on websites, chats, and webcasts, including those statements made through DeCastro's YouTube channels "Delete Laws" and his backup channel called "ChilisBackup."  *Id*., at ¶ 15.  These defamatory statements were false, they were made with knowledge of its falsity (or reckless disregard of its truth or falsity), they were made with actual malice, and they were designed to hold Abrams up to scorn, hatred, ridicule or contempt in the minds of considerable and

respectable segments of the community.  *Id.*, at ¶¶ 16-19.  Abrams filed a one-count counterclaim for defamation given the financial damages, emotional distress and anguish suffered as a result of DeCastro's statements.  *Id.*, at ¶¶ 21-25.

On November 16, 2022, after Abrams filed his counterclaims, DeCastro amended his complaint to raise allegations of copyright infringement based on Abrams' alleged unauthorized use of DeCastro's YouTube videos on his own channels.  *See* FIRST AMENDED COMPLAINT [ECF No. 62].[1]  The sole count of the First Amended Complaint is a claim for copyright infringement, pursuant to federal statute: 17 U.S.C., §§ 501, *et seq.  See id.*[2]

---

[1] DeCastro then filed a supplement complaint to add YouTube as a defendant.  *See* ECF No. 79.

[2] It appears that DeCastro, in amending his complaint, has abandoned the defamation-based causes of action in favor of his newly minted copyright infringement claims.  Abrams is wary that DeCastro has done this intentionally so that he could do an end-run around this Court's orders declining to accept his belatedly filed notice of voluntary dismissal of the defamation-based claims.  Abrams' concern is that DeCastro may re-file the defamation cause of action in a California court (a venue that lacks personal jurisdiction over Abrams, a Massachusetts resident with insufficient ties to California).  The California court should nonetheless dismiss such a re-filed claim, not only for a lack of personal jurisdiction, but under the doctrine against claim splitting, which precludes a litigant from strategically pursuing in a subsequent suit claims which "were or could have been brought against the original defendant in the original suit." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17–18 (1st Cir. 2010); *see also Mendoza v. Amalgamated Transit Union Int'l,* 30 F.4th 879, 886 (9th Cir. 2022).  While such a subsequently filed claim would be promptly dismissed, Abrams recognizes that DeCastro has brazenly admitted that his goals in pursuing litigation against Abrams and Peter is not to win, but to vex.  *See* ECF No. 71, at * 1 ("I will break them financially.  They will have to hire a lawyer.  I will file motion after motion after and I'll just keep going legally after them until I break them, until they can't afford to hire a lawyer anymore so they run out of money.  That's what I'm gonna do, I'm gonna break them").  Such improper and ulterior motives warrants this Court's attention here to avoid future abuse and harassment.  Accordingly, Abrams will agree to give DeCastro one final chance to re-plead the defamation cause of action in a Third Amended Complaint, with Abrams' assent, so long as it is requested within ten (10) days of receiving Abrams' forthcoming motion to dismiss the Second Amended Complaint.  Should DeCastro decline the invitation, Abrams asks that this Court to rule that the defamation-based claims raised in the original Complaint are dismissed, with prejudice, and reject any further attempts by DeCastro to amend the complaint as futile, unduly prejudicial, in bad faith, and in furtherance of DeCastro's documented dilatory motives.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

On December 8, 2022, DeCastro moved to dismiss Abrams' Counterclaims. *See* PLAINTIFF'S MOTION TO DISMISS JOSHUA ABRAMS'S COUNTERCLAIMS [ECF No. 86]. Although the arguments are undeveloped, he seems to merely state a list of Rule 12(b) defenses including dismissal pursuant to FED. R. CIV. P. 12(b)(1) (lack of subject-matter jurisdiction); 12(b)(2) (lack of personal jurisdiction); 12(b)(4) (insufficient process); and 12(b)(6) (failure to state a colorable claim for relief). Each of these bases for dismissal can be disposed of in short order, as none of which are remotely meritorious. Accordingly, DeCastro's motion should be DENIED.

### III. THIS COURT HAS ORIGINAL SUBJECT-MATTER JURISDICTION OVER ABRAMS' COUNTERCLAIMS

DeCastro's first basis for dismissal should be denied out of hand, as the Court clearly has subject-matter jurisdiction over Abrams' counterclaims. This Court has jurisdiction to hear state law claims where the parties are diverse, and the amount-in-controversy exceeds $75,000.00. *See* 28 U.S.C., § 1332(a). Abrams and Peter are both citizens of Massachusetts, DeCastro is a citizen of California, and the amount-in-controversy exceeds $75,000.00. *See* ABRAMS' COUNTERCLAIMS, ¶¶ 10-12. Indeed, given the nature of the defamation-based counterclaims, seeking actual damages for loss of revenues due to declining YouTube viewership and membership, as well as emotional distress and mental anguish arising out of DeCastro's repeated defamatory comments about rape and domestic violence, pleading damages in excess of $75,000.00 is certainly plausible and made in good faith. Under these circumstances, the amount-in-controversy plead in the counterclaims controls. *See Esquilin-Mendoza v. Don King Prods., Inc.*, 638 F.3d 1, 4 (1st Cir. 2011) ("the amount specified by the plaintiff controls, as long as that amount is asserted in good faith . . . a court can dismiss an action for insufficiency of the amount in controversy only when, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff never was entitled to recover a sum equal to, or in excess of, the

4

jurisdictional minimum") (internal quotations and alterations omitted). Accordingly, the Court has subject-matter jurisdiction over Abrams' counterclaims.

DeCastro's motion does not seem to address whether the Court has subject-matter jurisdiction under the diversity of citizenship statute and instead focuses on supplemental jurisdiction. However, the Court need not address supplemental jurisdiction if (as here) the counterclaims have original jurisdiction under 28 U.S.C., § 1332 in the first instance. For that reason, the motion should be denied.

Even if the Court determined that original jurisdiction was lacking under § 1332, the Court would still have supplemental jurisdiction to hear Abrams' counterclaims under 28 U.S.C., § 1367(a). *See* ABRAMS' COUNTERCLAIMS, at ¶ 12. The counterclaims are "so related to claims in the action within [its] original jurisdiction." *Id*. Courts have interpreted this "so related to" language to encompass claims that share a "common nucleus of operative fact" with the claims over which there is jurisdiction or "are such that [they] . . . would ordinarily be expected to [be] tried . . . in one judicial proceeding." *Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 72 (1st Cir. 2013) (alteration in original); quoting *Penobscot Indian Nation v. Key Bank of Me.*, 112 F.3d 538, 564 (1st Cir. 1997). In this case, both parties alleged various statements made in ongoing back-and-forth debates and arguments over YouTube channels were defamatory. It is this common nucleus of facts that makes the claims and counterclaims related. To get around this, DeCastro seemingly asks this Court to invoke its discretion to decline supplemental jurisdiction pursuant to 28 U.S.C., § 1367(c)(2), because the state law claims, according to him, purportedly dominate over the original federal claims. This argument is undeveloped as it does not put Abrams or the Court on notice as to how DeCastro believes this to be true. DeCastro fails to recognize that his state law defamation claims (where he invoked

5

subject-matter jurisdiction) are no different that Abrams' state law defamation claims. Accordingly, it is hard to take DeCastro's claim of predominance seriously, when the claims were essentially the same. But this inquiry is irrelevant because the Court has original jurisdiction under § 1332, and the Court cannot decline jurisdiction under § 1367(c).[3]

## IV. THIS COURT HAS PERSONAL JURISDICTION OVER DECASTRO

DeCastro next seeks dismissal for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2). The Court can make quick work of this because "[a] plaintiff consents to the personal jurisdiction of a court by bringing suit in that court." *Driscoll v. McCann*, 505 F. Supp. 3d 32, 36 (D. Mass. 2020) (Burroughs, J.); citing *Roberts v. Jack L. Marcus Co.*, No. 1:17-cv-11782, 2018 WL 443445, at *2 (D. Mass. Jan. 16, 2018); *Adam v. Saenger*, 303 U.S. 59, 67 (1938).

## V. THERE WAS NO INSUFFICIENCY OF PROCESS

DeCastro also seeks dismissal under the seldom invoked FED. R. CIV. P. 12(b)(4) defense, claiming insufficient process. This defense challenges the "contents of the summons." *See Connolly v. Shaw's Supermarkets, Inc.*, 355 F. Supp. 3d 9, 14 (D. Mass. 2018). This defense fails because as a counterclaim there was no summons and there was no service of process. Instead, service of Abrams' counterclaims was completed by "sending it to a registered user by filing it with the court's electronic-filing system." *See* FED. R. CIV. P. 5(b)(2)(E). DeCastro requested – and was granted – access to the Court's electronic filing system at the status

---

[3] By amending the complaint and abandoning the defamation-based causes of action in favor of the copyright infringement causes of action, that would have the effect of changing the Court's original basis for jurisdiction from diversity jurisdiction pursuant to 28 U.S.C., § 1332, to federal question jurisdiction pursuant to 28 U.S.C., § 1331. This does not affect the analysis as to whether the Court has subject-matter jurisdiction over Abrams' counterclaims. These counterclaims still have original diversity jurisdiction, for the reasons stated above, and DeCastro has failed to articulate any sound argument as to why diversity jurisdiction is lacking, why supplemental jurisdiction is lacking, or why the Court should decline to exercise supplemental jurisdiction given the claims raised in either the First or the Second Amended Complaint.

conference held on October 24, 2022. *See* ECF No. 44. Therefore, service of the counterclaims was proper, and no summons ever issued.[4]

## VI. MASSACHUSETTS DEFAMATION LAW APPLIES

Finally, DeCastro challenges the merits of Abrams' counterclaims on one simple point – DeCastro claims that the counterclaims do not articulate which state law applies. DeCastro cites no caselaw that stands for the proposition that a claimant must identify the substantive state law that the Court should apply at the motion to dismiss stage. Nevertheless, the answer to DeCastro's question is readily apparent. Where a statement was published nationally, the law of the state where the defamed party was domiciled at the time of publication applies. *See Green v. Cosby*, 138 F. Supp. 3d 114, 124 (D. Mass. 2015); quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 150(2) and cmt. B. Given this well-settled principle, it is quite evident from the text of the counterclaims that Massachusetts law applies. Abrams plead that he was a resident of Massachusetts, and that the defamatory statements were published on YouTube channels. *See* ABRAMS' COUNTERCLAIMS, at ¶¶ 10, 14, 15, and 22. These facts give the necessary inference that Massachusetts defamation law applies. DeCastro does not articulate any other basis for dismissal pursuant to FED. R. CIV. P. 12(b)(6), other than baldly making undeveloped arguments about an alleged failure to identify the requisite elements of a viable defamation case under Massachusetts law. Abrams declines to guess what specific issues DeCastro has with the defamation cause of action and this Court need not consider such undeveloped arguments. *Cf. Vargas-Colon v. Fundacion Damas, Inc.*, 864 F.3d 14, 29 (1st Cir. 2017) (woefully undeveloped arguments deemed waived).

---

[4] DeCastro also made reference to Local Rule 40.1(g)(5), claiming a failure to identify a related case. This rule places an obligation on the plaintiff (i.e., DeCastro) filing an initial pleading, not a defendant filing a counterclaim. Even so, Abrams knows of no such related cases.

In any event, Massachusetts law simply requires the following elements be pled in a defamation cause of action: (1) a false statement "of and concerning" Abrams; (2) the statement could damage Abrams' reputation in the community; (3) DeCastro was at fault in making the statement; and (4) the statement caused economic harm or is actionable without proof of economic loss. *Albright v. Morton*, 321 F. Supp. 2d 130, 134 (D. Mass. 2004), aff'd sub nom. *Amrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005); citing *Ravnikar v. Bogojavlensky*, 782 N.E.2d 508 (Mass. 2003); *Reilly v. Associated Press & Others*, 797 N.E.2d 1204 (Mass. App. Ct. 2003), cert denied, 803 N.E.2d 333 (Mass. 2004).  Here, Abrams cited several statements that DeCastro made, accusing him of being a rapist or engaged in domestic violence.  *See* ABRAMS' COUNTERCLAIMS, at ¶¶ 14, 15, and 22.  These statements were false, yet published by DeCastro, nonetheless.  *Id.*, at ¶¶ 14-17, 22, and 23.  Given the atrocity of the false statements made by DeCastro, the defamatory statements were designed to cause, and have caused damage to Abrams' reputation.  *Id.*, at 19.  Finally, Abrams pled that he was financially harmed through a loss of membership and viewership of his YouTube channel, as well as emotional distress and anguish.  *Id.*, at ¶¶ 20 and 25.  While unclear what issues DeCastro has with Abrams' counterclaims (other than DeCastro's failure to recognize that this as a claim that applies Massachusetts defamation law), it is clear that Abrams has sufficiently plead each element of a defamation cause of action and the motion should be denied.

## VII.    CONCLUSION

The defamation cause of action Abrams filed against DeCastro is a viable counterclaim and none of the defenses raised by DeCastro justify dismissal.  DeCastro's motion to dismiss Abrams' counterclaims should accordingly be <u>DENIED</u>.

Respectfully Submitted,

*/s/ Joshua N. Garick, Esq.*

Joshua N. Garick (BBO #674603)
LAW OFFICES OF JOSHUA N. GARICK, P.C.
34 Salem Street, Suite 202
Reading, Massachusetts 01867
Phone: (617) 600-7520
Fax: (617) 600-7430
Joshua@GarickLaw.com

*Counsel for Joshua Abrams a/k/a Accountability for All*

Dated:  December 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joshua N. Garick*
Joshua N. Garick (BBO #674603)

Dated:  December 21, 2022