UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE MARIA DeCASTRO, a/k/a CHILLE DeCASTRO, a/k/a DELETE LAWZ, <br><br> Plaintiff and Counterclaims Defendant, <br><br> v. <br><br> JOSHUA ABRAMS a/k/a ACCOUNTABILITY FOR ALL, KATE PETER a/k/a MASSHOLE TROLL MAFIA, <br><br> Defendants and Counterclaims Plaintiffs, and <br><br> GOOGLE LLC, JOHN DOES 1–50, JOHN DOES 1–20, <br><br> Defendants. | Civil Action No. 1:22-cv-11421-ABD |

### **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

After Plaintiff Jose Maria DeCastro filed a complaint against Joshua Abrams and Kate Peter asserting claims for defamation and intentional infliction of emotional distress, [ECF No. 1],[1] Abrams and Peter answered the complaint and filed counterclaims for defamation. [ECF Nos. 53 ("Abrams Compl.") & 54 ("Peter Compl.")]. Before the Court are DeCastro's motions to dismiss Abrams' and Peter's counterclaims. See [ECF Nos. 86, 90]. For the reasons stated below, DeCastro's motions to dismiss are GRANTED.

---

[1] The Court has already dismissed Plaintiff's operative complaint against all parties. [ECF No. 133]. A procedural history of Plaintiff's claims is provided in that Order. Because much of that history is not relevant for purposes of this Order, the Court does not repeat it here.

I.      BACKGROUND

The following relevant facts are taken primarily from the counterclaim complaints, which the Court assumes to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). Because Abrams and Peter bring separate claims, the Court describes the facts from each counterclaim complaint separately.

A.      **Abrams' Defamation Claim**

Abrams who resides in Stoneham, Massachusetts and DeCastro, who resides in Santa Monica, California, both operate YouTube channels. [Abrams Compl. ¶¶ 10, 11, 15, 20].

DeCastro has said on websites, chats, and webcasts, including on his YouTube channels "Delete Laws" and "ChillisBackup" that, among other things, Abrams is a rapist and an attempted rapist, and that he went to prison for raping his girlfriend and beating up his father. [Compl. ¶¶ 14–15]. Abrams claims that (1) these statements were all false, (2) DeCastro made the statements with knowledge of their falsity or had reckless disregard for their truth or falsity, (3) DeCastro made the statements with actual malice, (4) the statements were "designed to hold Abrams up to scorn, hatred, ridicule or contempt in the minds of considerable and respectable segments of the community," and (5) DeCastro intended to and did in fact cause Abrams financial harm by reducing membership and viewership of Abrams' YouTube channels, which in turn reduced revenue earned from his videos. [Id. ¶¶ 16–20, 25]. Abrams claims that the amount in controversy exceeds $75,000. [Id. ¶ 12].

B.      **Peter's Defamation Claim**

Peter also runs a YouTube channel. [Peter Compl. ¶ 4]. Her channel has 26,500 subscribers, a lifetime view count of upwards of two million, and an average unique visitor count of approximately 40,000 per month. [Id.]. She has a "modest but fiercely loyal fan base for the

Channel, and maintain[s] a reputation for meticulous research, accurate information, and accurate reporting." [Id. ¶ 6]. With respect to DeCastro, Peter claims that DeCastro is a "public figure" who has an IMDB page and has been featured in new articles, interviews, promotional videos, and national television programs. [Id. ¶ 11].

Peter published videos about DeCastro that questioned his advertising of legal service. In response, DeCastro spread "defamatory lies and misinformation" about Peter including by falsely saying to nearly 50,000 YouTube subscribers that Peter "'sold out her daughter for sex,' . . . 'pimped out her own kid and . . . the division of family services took her children away,'" and that she "was arrested . . . for siphoning gas out of a car." [Peter Compl. ¶¶ 2, 9–10, 12]. Peter specifically claims that the statements regarding "pimping out" her daughter are false and denies that she was arrested for siphoning gas. [Id. ¶ 12–14]. Peter avers that DeCastro's statements "caused her damage." [ECF No. ¶ 19].[2]

### C.   Procedural History

On September 2, 2022, DeCastro filed suit against Abrams and Peter for defamation and intentional infliction of emotional distress, [ECF No. 1], and on November 7, 2022, Abrams and Peter answered the complaint and filed counterclaims for defamation. [ECF Nos. 53, 54]. DeCastro moved to dismiss the counterclaims on December 8, 2022, [ECF No. 86 (Abrams)], and December 11, 2022, [ECF No. 90 (Peter)]. DeCastro also filed supplemental authorities in support of his motion to dismiss Abrams' counterclaims on December 12, 2022. [ECF No. 91]. Abrams opposed on December 21, 2022, [ECF No. 93], and Peter opposed on December 27, 2022, [ECF No. 98].

---

[2] Peter does not provide a jurisdictional statement in her complaint and does not explain where she resides, where DeCastro resides, or whether the amount in controversy exceeds $75,000.

3

II.     DISCUSSION

DeCastro moves to dismiss both counterclaim complaints on four grounds: (1) lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), [ECF No. 87 at 2–3; ECF No. 90 at 1–2]; (2) lack of personal jurisdiction under Rule 12(b)(2), [ECF No. 87 at 3; ECF No. 90 at 2]; (3) insufficient process under Rule 12(b)(4), [ECF No. 87 at 3; ECF No. 90 at 2]; and (4) failure to state a claim under Rule 12(b)(6), [ECF No. 87 at 3–4; ECF No. 90 at 2–3]. Because the Court finds that Abrams and Peter have not sufficiently pled facts to support subject matter jurisdiction, the Court only reaches the first issue.[3]

Federal district courts have original diversity jurisdiction over all civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; Esquilin-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011); Garcia Perez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004); Acutus Fund, LLC v. Drone Guarder, Inc., 588 F. Supp. 3d 177, 183 (D. Mass. 2022). With respect to the amount in controversy, "[t]he sum claimed by the plaintiff controls if the claim is apparently made in good faith," and it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Andersen v. Vagaro, Inc., 57 F.4th 11, 14–15 (1st Cir. 2023) (quoting St. Paul

---

[3] Though the Court only reaches subject matter jurisdiction, it notes that Plaintiff's arguments under Rule 12(b)(2) and 12(b)(4) are without merit. Regarding personal jurisdiction under Rule 12(b)(2), when a plaintiff brings "suit in the Federal District Court for the District of Massachusetts, it submit[s] itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants." Lehman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 451 (1932). Regarding a failure to serve, Rule 5(b)(2)(E) governs service of pleadings after the original complaint, [ECF No. 1], and service is complete under the rule by "sending it to a registered user by filing it with the court's electronic-filing system." Fed. R. Civ. P. 5(b)(2)(E). Abrams and Peter filed their counterclaims with the Court's electronic filing system, [ECF Nos. 53, 54], and DeCastro received them as a registered user of the Court's electronic-filing system, see [ECF No. 44].

Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938)).  Normally, "'a plaintiff's general allegation that the dispute exceeds the jurisdictional minimum is sufficient to support jurisdiction,' [but] when challenged, the plaintiff 'has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.'"  Andersen, 57 F.4th at 15 (quoting Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)).

For example, in Andersen, the plaintiff alleged that her claims "exceeded the statutory amount-in-controversy requirement," and she "demanded $7,186,785 in damages."  57 F.4th at 14.  Her complaint also claimed that she gave away "free services . . . on at least thirty occasions," and asserted "hundreds of cancelled monthly memberships[,] the loss of over 8,000 clients and two employees[,] and lost profits."  Id. at 16.  Defendant moved to dismiss under Rule 12(b)(1) based on plaintiff's failure to sufficiently establish that her claims met the amount in controversy requirement.  Id. at 13.  In response, instead of "proffering additional factual support," plaintiff "simply relied on the face of her complaint."  Id. at 15.[4]  The First Circuit first found that because the defendant contested the sufficiency of the pleading, "the burden shifted back to [plaintiff] to present 'with "sufficient particularity" facts that in some way support the contention that there is more than $75,000 at stake.'"  Id. (quoting Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 42 (1st Cir. 2012)).  The plaintiff did not meet the pleading requirement in part because she "attached no monetary value to services given away or to monthly memberships, clients, and employees lost. Further, while [plaintiff] claimed los[t profits], she

---

[4] As noted in Andersen, "[t]o fend off a jurisdictional challenge, a plaintiff may amend the complaint or submit additional documentation, such as affidavits, medical reports, or interrogatories." 57 F.4th at 15 (citations omitted).  Neither Abrams nor Peter have done so here.

5

proffered nothing as to [the] profits or overall value other than calling [her] company 'successful.'" Id. at 16.

Here, DeCastro challenges whether the amounts claimed by Abrams and Peter exceed $75,000. [ECF No. 87 at 2; ECF No. 90 at 2–3]. As explained in Andersen, this shifts the burden to Abrams and Peter to show with sufficient particularity that it is not a legal certainty that the claim involves less than $75,000. See 57 F.4th at 14–15. Like the plaintiff in Andersen, they have failed to do so.

Abrams pleads that the amount in controversy exceeds $75,000 because DeCastro's actions have reduced the membership and viewership of Abrams' YouTube channels, which in turn reduced the revenue earned from his videos. [ECF No. 53 ¶¶ 12, 16–20, 25]. Abrams does not provide any specific calculation or estimate of monetary damages resulting from DeCastro's conduct. For example, he provides no information about how many individuals view and/or are members of his channel, how much revenue he gets from members and/or viewers, or how many members and/or viewers he lost because of DeCastro's statements.

With respect to Peter, she does not even bother to state that the amount in controversy exceeds $75,000, and only generally alleges that DeCastro's actions "caused her damage." [ECF No. 54 ¶ 19]. She does not explain how she has been damaged, and if she has been damaged monetarily, how and by how much.

Thus, the Court finds that neither Abrams nor Peter have established with sufficient particularity that it is not a legal certainty that the claim involves less than $75,000. See Andersen, 57 F.4th at 15–16. Because Abrams and Peter have failed to plead sufficient facts to

establish that the Court has subject matter jurisdiction,[5] the claims must be dismissed under Rule 12(b)(1).[6]

## III. CONCLUSION

Accordingly, DeCastro's motions to dismiss Abrams' and Peter's counterclaims, [ECF Nos. 86, 90], are <u>GRANTED</u>.

**SO ORDERED.**

July 11, 2023　　　　　　　　　　　　　　　　　　/s/ Allison D. Burroughs
　　　　　　　　　　　　　　　　　　　　　　　　ALLISON D. BURROUGHS
　　　　　　　　　　　　　　　　　　　　　　　　U.S. DISTRICT JUDGE

---

[5] The Court also notes that Peter failed to plead or provide an indication that she and DeCastro are from different states for purposes of establishing diversity jurisdiction. <u>See</u> [ECF No. 54 at 11–15].

[6] Because DeCastro no longer brings claims for defamation and intentional infliction of emotional distress against Abrams and Peter, <u>see</u> [ECF No. 67], and because the Court dismissed DeCastro's copyright claims against all defendants, <u>see</u> [ECF No. 133], the Court declines to exercise supplemental jurisdiction at this time. <u>Eves v. LePage</u>, 842 F.3d 133, 146 (1st Cir. 2016) ("A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction.") (quoting 28 U.S.C. § 1367(c)(3)) (internal quotation marks omitted), vacated in part and reinstated in part by 927 F.3d 575, 589 (1st Cir. 2019) (reinstating opinion as to dismissal of state-law claims).